FILED
2022 Jun-21  PM 03:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| BETTY HARRIS, as personal representative of the Estate of Wallace Wilder, | ) ) ) | |
| Plaintiff, | ) ) | 7:21-cv-00608-LSC |
| v. | ) ) | |
| TODD HALL, *et al.*, | ) ) | |
| Defendants. | ) ) | |

### MEMORANDUM OF OPINION

Plaintiff Betty Harris ("Harris") brings this action against Defendants Pickens County Sheriff Todd Hall ("Hall"), Pickens County Deputy Sheriff Jeremy Douglas Heard ("Heard"), Pickens County Deputy Sheriff Andrew Glen Heritage ("Heritage"), Pickens County Deputy Sheriff Latham ("Latham"), Gordo Chief of Police Johnny Stephenson ("Stephenson"), the Town of Gordo ("Town of Gordo"), Gordo Police Officer Cory Patterson ("Patterson"), Gordo Police Officer Ryan Lewis Wise ("Wise"), Pickens County District Attorney investigator Samuel Jordan Powell ("Powell"), Pickens County District Attorney investigator Michael Scott Gilliam ("Gilliam"), Grandview Gardens, Ltd. ("Grandview") and Hollyhand Companies, Inc. ("Hollyhand") (collectively "Defendants").

Presently before the Court are Defendant Powell's Motion to Dismiss (Doc. 30), Defendants Town of Gordo, Patterson, Stephenson, and Wise's Motion to Dismiss (Doc. 32), Defendants Hall, Heard, Heritage, and Latham's Motion to Dismiss (Doc. 43), and Defendant Gilliam's Motion to Dismiss (Doc. 47). The motions are fully briefed and ripe for review. For the reasons stated below, Defendant Powell's Motion to Dismiss (Doc. 30) is due to be GRANTED IN PART and DENIED IN PART. Defendants Town of Gordo, Patterson, Stephenson, and Wise's Motion to Dismiss (Doc. 32) is due to be GRANTED IN PART and DENIED IN PART. Defendants Hall, Heard, Heritage, and Latham's Motion to Dismiss (Doc. 43) is due to be GRANTED IN PART and DENIED IN PART. Defendant Gilliam's Motion to Dismiss (Doc. 47) is due to be GRANTED IN PART and DENIED IN PART.

## I.    Harris's Allegations[1]

On August 28, 2019, police were called to Wallace Wilder's ("Wilder") residence. (Doc. 20 at ¶ 18). Patterson was the first officer to arrive on scene. (*Id.*). Patterson began talking with Wilder through the door and asked Wilder to open it.

---

[1] In evaluating a motion to dismiss, this Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012) (quoting *Ironworkers Loc. Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011)). The following facts are, therefore, taken from the allegations contained in Plaintiff's Complaint, and the Court makes no ruling on their veracity

(*Id.*). Wilder refused. (*Id.* at ¶ 19). Patterson then called Stephenson who called for additional assistance. (*Id.* at ¶ 20). Powell, Gilliam, Hall, Heritage, Heard, and Latham all eventually arrived at Wilder's residence. (*Id.* at ¶ 21). Stepheson, Patterson, and Hall all knew Wilder and knew of his schizophrenia due to previous interactions with him as law enforcement officers. (*Id.* at ¶ 17–18).

The officers called an ambulance to the scene. (*Id.* at ¶ 23). As the officers attempted to get Wilder to open the door, a maintenance worker with Grandview and Hollyhand provided Stephenson with a key to the front door of Wilder's apartment. (*Id.* at ¶ 28). Powell then distracted Wilder at a side window while Stephenson and the other officers used the key to make entry through the front door. (*Id.* at ¶ 31). Because the door was bolted, Patterson kicked the door open and saw that Wilder had a knife. (*Id.* at ¶ 33). Wilder then slammed the door back shut and attempted to prevent officers from entering his residence. (*Id.*). Patterson, Heard, Wise, and Latham all discharged their tasers through the crack in the door but missed. (*Id.* at ¶ 34). After reloading, Stephenson's taser hit Wilder and all the officers rushed in to subdue Wilder. (*Id.* at ¶ 35). After the officers entered Wilder's residence, a prong from the taser dislodged and Wilder was able to recover and get up. (*Id.* at ¶ 39). Latham and Hall then fired five shots which killed Wilder. (*Id.* at ¶ 40).

## II.   Standards of Review

### A. Rule 12(b)(6)

To withstand a 12(b)(6) motion a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Lord Abbett Mun. Income Fund, Inc. v. Tyson*, 671 F.3d 1203, 1207 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The Court next "assume[s] the veracity" of all well-pleaded factual allegations and determines whether those allegations "plausibly give rise to an entitlement to relief." *Id.* Only the complaint itself and any attachments thereto may be considered, even when the parties attempt to present additional evidence. *See Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1168 (11th Cir. 2014); *see also* Fed. R. Civ. P. 12(d).

### B. Qualified Immunity

"The purpose of [qualified] immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "Qualified immunity offers complete protection for government officials

sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). The qualified immunity analysis does not take into account an officer's alleged subjective intent; instead, it "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id*. Thus, to overcome a public official's entitlement to qualified immunity, a plaintiff must be able to establish not only that the public official acted wrongfully, but also be able to point the court to law existing at the time of the alleged violation that provided "fair warning" that the conduct of the defendants was illegal. *Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003).

To be eligible for qualified immunity, the officers must demonstrate that they were acting in the scope of their discretionary authority. *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004). "To determine whether an official was engaged in a discretionary function, [courts] consider whether the acts the official undertook 'are

of a type that fell within the employee's job responsibilities.'" *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (citing *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)). "[T]he determination that an officer was acting within his discretionary authority is quite a low hurdle to clear." *Godby v. Montgomery County Bd. of Educ.*, 996 F. Supp. 1390, 1401 (M.D. Ala. 1999).

### C. Shotgun Pleadings

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The *Federal Rules of Civil Procedure* further clarify that:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence–and each defense other than a denial—must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b). Complaints that violate these rules are often referred to as shotgun pleadings. The Eleventh Circuit has identified four rough "categories" of shotgun pleadings that are prohibited:

> [1.] a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint....[2.] a complaint that does not commit the mortal sin

of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action....[3. a complaint that] commits the sin of not separating into a different count each cause of action or claim for relief. [4.]...[a complaint] asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland v. Palm Beach Cty. Sheriff's Office,* 792 F.3d 1313, 1321–23 (11th Cir. 2015) (footnotes omitted). Despite the variety of forms that shotgun pleadings may take, a singular deficiency unites them all: "they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

## III.   Discussion

In Count One of her Second Amended Complaint ("Complaint") (Doc. 20), Harris asserts a claim for deprivation of life under the due process clause of the Fourteenth Amendment to the United States Constitution against Defendants. In Count Two, Harris asserts a violation of the Fourth Amendment's prohibition against the use of excessive force in an unreasonable seizure under 42 U.S.C. § 1983 ("§ 1983") against Defendants. In Count Three, Harris asserts an excessive force claim under § 1983 against the "law enforcement Defendants." (Doc. 20 at ¶ 62). In Count Four, Harris asserts a failure to instruct, supervise, control, or discipline claim

under § 1983 against Stephenson and the Town of Gordo. In Count Five, Harris asserts an unreasonable search via warrantless entry claim against the "law enforcement defendants," Grandview, and Hollyhand. In Count Six, Harris asserts a negligence claim for wrongful death against Defendants. In Count Seven, Harris asserts a wantonness claim for wrongful death against Defendants. In Count Eight, Harris asserts a municipal liability claim against the Town of Gordo. In Count Nine, Harris asserts am unreasonable force claim against Hall and Latham under § 1983. In Count Ten, Harris asserts a conspiracy claim under §1983 against Defendants. In Count Eleven, Harris asserts a negligence claim against Grandview and Hollyhand. In Count Twelve, Harris asserts a *respondeat superior* claim against Grandview and Hollyhand.

### A. Count One

In Count One of her Complaint, Harris asserts a claim for deprivation of life under the due process clause of the Fourteenth Amendment against all Defendants. The Town of Gordo, Patterson, Stephenson, Wise, Hall, Heard, Heritage, Latham, and Gilliam all argue Count One should be dismissed because it cannot be asserted pursuant to the Fourteenth Amendment. (Doc. 33 at 4; Doc. 44 at 6; Doc. 48 at 18). Powell argues that Count One should be dismissed because it is an impermissible shotgun pleading. (Doc. 31 at 11).

### i. Fourteenth Amendment

In Harris's Opposition to Defendants' Motion to Dismiss (Doc. 51), Harris failed to explain why this claim should proceed under the Fourteenth Amendment. As a result, Harris has abandoned Count One as to defendants the Town of Gordo, Patterson, Stephenson, Wise, Hall, Heard, Heritage, Latham, and Gilliam.[2] Accordingly, Defendants Town of Gordo, Patterson, Stephenson, and Wise's Motion to Dismiss (Doc. 32), Defendants Hall, Heard, Heritage, and Latham's Motion to Dismiss (Doc. 43), and Defendant Gilliam's Motion to Dismiss (Doc. 47) are due to be GRANTED.

### ii. Shotgun Pleading

Powell argues that Harris failed "to plead anything more than one legal conclusion" in Count One which renders it an impermissible shotgun pleading. This Court disagrees. Harris has certainly failed to specifically allege which facts give rise

---

[2] Federal courts in this circuit, as well as in others, have found that a party's failure to respond to or to oppose arguments raised in a pending motion may result in an abandonment of those issues. *See, e.g., Hooper v. City of Montgomery,* 482 F.Supp.2d 1330, 1334 (M.D. Ala. 2007) (finding that the plaintiff's failure to respond to certain arguments raised in defendant's motion to dismiss resulted in the abandonment and subsequent dismissal of those claims); *Black v. Panola Sch. Dist.,* 461 F.3d 584, 588 n. 1 (5th Cir. 2006) (explaining that the plaintiff's failure "to pursue [a] claim beyond her complaint constituted abandonment."). Similarly, "[i]t is not for the court to manufacture arguments on Plaintiff's behalf." *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.,* 124 F.Supp.2d 1228, 1236 (M.D. Ala. 2000); *cf. Resolution Trust Corp. V. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.").

to her due process claim. However, Harris did incorporate by reference the facts laid out in her previous fifty-five paragraphs. A review of those facts reveals that Wilder was shot after numerous law enforcement officers forced their way into his residence. Because Rule 8(a)(2) only requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Harris has plead enough information to survive a motion to dismiss as to Count One. *See* Fed. R. Civ. P. 8(a)(2). Accordingly, as to Count One, Defendant Powell's Motion to Dismiss (Doc. 30) is due to be DENIED.

### B. Counts Two and Three[3]

In Count Two, Harris asserts a violation of the Fourth Amendment's prohibition against the use of excessive force in an unreasonable seizure under §1983 against Defendants. In Count Three, Harris asserts an excessive force claim under § 1983 against the "law enforcement Defendants."

### i. Abatement

The Town of Gordo, Patterson, Stephenson, Wise, Hall, Heard, Heritage, Latham, Gilliam, and Powell all argue Counts Two and Three should be dismissed

---

[3] Count Two asserts a claim of excessive force in the shooting of Wilder. Count Three asserts a claim of excessive force in the tasering of Wilder. At this stage of the litigation, the analysis is the same for both Counts and the Court will address them at the same time.

because they do not survive the death of Wilder. (Doc. 31 at 15; Doc. 33 at 6; Doc. 44 at 7; Doc. 48 at 14).

By its terms, 42 U.S.C. § 1983 does not provide for the survival of civil rights actions. *Estate of Gilliam v. City of Prattville*, 639 F.3d 1041, 1045 (11th Cir. 2011). Due to this "deficiency" in the statute, the survivorship of civil rights actions is governed by 42 U.S.C. § 1988(a). *Robertson v. Wegmann,* 436 U.S. 584, 588–89 (1978). "That statute generally directs that, where federal law is 'deficient,' the state law of the forum applies as long as it is 'not inconsistent with the Constitution and the laws of the United States.'" *Gilliam*, 639 F.3d at 1045 (citing 42 U.S.C. § 1988(a)). The applicable Alabama survivorship law is Ala.Code § 6-5-462. *Id.* at 1046. Under that provision, "a deceased's unfiled tort claims do not survive the death of the putative plaintiff." *Bassie v. Obstetrics & Gynecology Assocs. of Northwest Ala., P.C.,* 828 So.2d 280, 282 (Ala. 2002). The Eleventh Circuit in *Gilliam* specifically held that Alabama's survivorship laws were not inconsistent with the laws of the United States or the Constitution. *Gilliam*, 639 F.3d at 1047. Thus, based upon Alabama law and Eleventh Circuit precedent, Wilder would have had to file his claims in Count Two and Three prior to his death for them to have survived his passing. However, if it is alleged that a constitutional violation actually causes the injured person's death, a § 1983 claim can be asserted through the Alabama wrongful

death statute, Ala. Code § 6-5-410. *Id.* at 1047–48; *Davis v. Edwards*, No. 3:16-cv-855-CDL-DAB, 2017 WL 6544847, at *11–12 (M.D. Ala. Sept. 5, 2017).

Accepting the allegations of the Complaint as true and construing them in a light most favorable to Plaintiff, Harris has alleged the underlying constitutional violation actually caused Wilder's death as to Count Two and Count Three. In Count Two, Harris alleges "[w]hen Wilder was tased and then shot and killed, defendants seized him through the use of excessive force in violation of his rights under the Fourth Amendment." (Doc. 20 at ¶ 60). Thus, Harris has alleged that the unreasonable seizure of Wilder was the cause of his death. In Count Three, Harris makes similar allegations. Count Three alleges that, "[a]s a direct result of Defendants' unlawful tasering of Wilder...Plaintiff suffered grievous bodily harm, was deprived of his right to be free from the unreasonable seizure of his person and the use of excessive force in violation of the rights under the Fourth and Fourteenth Amendments." (*Id.* at ¶ 65). Ultimately, Count Three sets forth facts claiming that the alleged unconstitutional conduct resulted in Wilder's death. As a result, Counts Two and Three have not abated.

Accordingly, Defendant Powell's Motion to Dismiss (Doc. 30), Defendants Town of Gordo, Patterson, Stephenson, and Wise's Motion to Dismiss (Doc. 32), Defendants Hall, Heard, Heritage, and Latham's Motion to Dismiss (Doc. 43), and

Defendant Gilliam's Motion to Dismiss (Doc. 47), to the extent they are based upon abatement, are due to be DENIED as to Count Two and Count Three.

### ii. Qualified Immunity

In addition to arguing Count Two and Count Three should be dismissed because of abatement, Defendants Hall, Heard, Heritage, and Latham assert that Count Two and Count Three should be dismissed based upon qualified immunity.[4] (Doc. 64 at 2). Here, Plaintiff does not dispute that Hall, Heard, Heritage, and Latham were engaged in a discretionary function at the time of the incident. As such, the following two-part test determines whether qualified immunity applies: first, the Court determines whether there was a constitutional violation; second, the Court determines whether the constitutional right in question was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In *Pearson v. Callahan*, the Court abandoned the rigid order of analysis enunciated in *Saucier* and left it to the district courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. 223, 236 (2009).

---

[4] Defendants Hall, Heard, Heritage, and Latham also argue qualified immunity applies to Count One. (Doc. 64 at 2). However, because Count One is due to be dismissed based upon abandonment, this Court need not address whether qualified immunity is appropriate.

### 1. Constitutional Violation

The alleged constitutional violations in this case arise under the Fourth Amendment to the United States Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Amendment's guarantee of freedom from unreasonable searches and seizures encompasses the right to be free from the use of excessive force in the course of an arrest, or other "seizure." *See Graham v. Connor*, 490 U.S. 386, 394–95 (1989); *Mercado v. City of Orlando*, 407 F.3d 1152, 1156–57 (11th Cir. 2005); *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004); *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (the unreasonable use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment). When an officer permissibly makes an arrest or investigatory stop, he may use "some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. However, under Eleventh Circuit law, "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Jackson v. Sauls,* 206 F.3d 1156, 1171 (11th Cir.

2000).[5]

It is clear that "apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner,* 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). A claim of excessive force used during the course of a seizure is analyzed through the lens of the Fourth Amendment's "objective reasonableness" standard. *Graham*, 490 U.S. at 395–96 (citing *Garner*, 471 U.S. 1); *McCullough v. Antolini*, 559 F.3d 1201, 1205–06 (11th Cir. 2009); *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009).

"In order to determine whether the amount of force used by a police officer was proper, a court must ask 'whether a reasonable officer would believe that this level of force is necessary in the situation at hand.'" *Lee*, 284 F.3d at 1197 (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1188 (11th Cir. 2001)); *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) ("The question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer."). The reasonableness of a particular use of force must be judged on a case-by-case basis "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *Long v. Slaton*, 508 F.3d 576, 580 (11th Cir. 2007); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir.

---

[5] Here, Harris has failed to bring a claim for an illegal arrest.

1993). When evaluating the reasonableness of a use of deadly force, we must weigh "the seriousness of the crime, whether the suspect poses an immediate danger to the officer or others, whether the suspect resisted or attempted to evade arrest, and the feasibility of providing a warning before employing deadly force." *Wade v. Daniels*, No. 18-12371, 2022 WL 2115325, at *3 (11th Cir. June 13, 2022) (citing *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010)). The second factor essentially asks "whether, given the circumstances, the suspect would have appeared to reasonable police officers to have been gravely dangerous." *Penley v. Eslinger*, 605 F.3d 843, 851 (11th Cir. 2010) (alteration accepted).

By Plaintiff's allegations, Harris has sufficiently alleged a constitutional violation based upon the use of a taser in Count Two and a firearm in Count Three. Harris alleges that on August 28, 2019, a neighbor of Wilder's called 911 after reportedly hearing loud noises from inside Wilder's apartment. (Doc. 20 at 6). After responding to the call, Defendants, including Hall, Heard, Heritage, and Latham, attempted to enter Wilder's home and saw that he had a knife. (*Id.* at 7–9). However, Harris alleges that Wilder did not "attempt to harm or threaten harm to anyone but instead simply slammed his door shut." (*Id.* at 9). As such, there are no allegations to support Wilder posed a threat at that point. Yet, Harris alleges that multiple tasers

were discharged at Wilder. (*Id.*) As such, a constitutional violation has been sufficiently alleged for Count Two.

Wilder was eventually struck by Stephenson's taser and fell backwards into the kitchen. (*Id.*) Harris then alleges that a taser prong dislodged from Wilder's body and he recovered and got up. (*Id.* at 10). Harris alleges that Latham and Hall then shot and killed Wilder. (*Id.*) There are no allegations that indicate Wilder was a threat when he recovered and got up. Harris has not alleged that Wilder still carried a knife, was threatening any officer, or was attempting to escape. Reviewing the allegations of the amended complaint in a light most favorable to Plaintiff, it cannot be said that the officers used only enough force as necessary when shooting Wilder. As pled, Plaintiff's allegations state a cause of action for unlawful and excessive force in violation of the Fourth Amendment against Hall, Heard, Heritage, and Latham. Thus, Harris has sufficiently alleged a constitutional violation as to Count Three.

## 2. Clearly Established

Next, the Court turns to the second step of qualified immunity—that is, whether the rights that Harris alleges were clearly established. There are two ways for a party to show that the law clearly established that a particular amount of force was excessive. The first is to point to a "materially similar case [that has] already decided that what the police officer was doing was

unlawful." *Willingham,* 261 F.3d at 1187. Because identifying factually similar cases may be difficult in the excessive force context, the Eleventh Circuit has recognized a narrow exception allowing parties to show "that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Priester v. City of Riviera Beach,* 208 F.3d 919, 926 (11th Cir. 2000) (quoting *Smith v. Mattox,* 127 F.3d 1416, 1419 (11th Cir. 1997)). Under this test, the law is clearly established, and qualified immunity can be overcome, only if the standards set forth in *Graham* and Eleventh Circuit case law "inevitably lead every reasonable officer in [the defendant's] position to conclude the force was unlawful." *Priester,* 208 F.3d at 926–27 (internal citations omitted).

The Eleventh Circuit has addressed a similar use of force in *Mercado v. City of Orlando*, 407 F.3d 1152, 1161 (11th Cir. 2005). In *Mercado*, law enforcement officers responded to a call that a man was threatening suicide. *Id.* at 1154. When the police arrived on the scene, Mercado was crying on the kitchen floor. *Id.* He was holding a knife and pointing it towards his heart. *Id.* The officers directed Mercado to drop his knife at least twice, but he refused. *Id.* He made no threatening moves towards the officers, and the officers failed to warn him that they would use force if he did not drop the weapon. *Id.* But one of the officers hit Mercado with a Sage SL6 Launcher—

a "less lethal munition"—twice to subdue him. *Id.* at 1154–55 (internal quotation mark omitted). Mercado suffered a fractured skull and disabling brain injuries. *Id.* at 1155. The Eleventh Circuit concluded that the officer who fired the weapon was not entitled to qualified immunity on Mercado's excessive force claim. *Id.* at 1157–61.

Here, as in *Mercado*, Wilder, even if he was still holding a knife, made no threatening moves towards the officers. As the Eleventh Circuit has recognized, "a person standing six feet away from an officer with a knife may present a different threat than a person six feet away with a gun." *Wade*, 2022 WL 2115325, at *3 (citing *Perez v. Suszczynski*, 809 F.3d 1213, 1220 (11th Cir. 2016)). Again, there are no allegations that indicate Wilder still carried a knife, was threatening any officer, or was attempting to escape. Thus, applying "the excessive force standard would inevitably lead every reasonable officer ... to conclude that the force" used—tasing and shooting Wilder, a non-threatening and non-resisting suspect—is not protected by our constitution. *Priester,* 208 F.3d at 926–27. Therefore, Hall, Heard, Heritage, and Latham are not entitled to qualified immunity on Harris's excessive force claims at this stage of the litigation. Accordingly, Defendants Hall, Heard, Heritage, and Latham's Motion to Dismiss (Doc. 43) based upon qualified immunity is due to be DENIED as to Count Two and Count Three.

### C. Count Four

In Count Four, Harris asserts a failure to instruct, supervise, control, or discipline claim under § 1983 against Stephenson and the Town of Gordo. Stephenson and the Town of Gordo argue that Count Four is due to be dismissed for a failure to allege enough facts to sustain a claim. (Doc. 33 at 8–9).

As a municipality, the Town of Gordo cannot be held vicariously liable under § 1983 for constitutional violations committed by its officers. *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). Harris must allege that the Town of Gordo had a policy, custom, or practice that caused the deprivation. *Id.* Harris could do so in several ways, such as pointing out an official policy enacted by a legislative body, a longstanding practice that final policymakers have acquiesced in, or a final policymaker's ratification of an unconstitutional decision. *Id.* Here, Harris alleges that Stephenson "is the policy maker for the Town of Gordo for law enforcement matters and thus his directives, actions or inactions constitute a policy, custom, or practice for the Town of Gordo." (Doc. 20 at ¶ 49). Harris also alleged that Stephenson was present at the scene when Wilder was killed and that his actions at the scene constituted the policies and practices of the Town of Gordo. (Doc. 57 at ¶

3).[6] Thus, Harris has alleged that Stephenson, a final policymaker, ratified an unconstitutional decision while at the scene of Wilder's death. Accordingly, Harris has alleged enough to survive a motion to dismiss as to the Town of Gordo.

Like a municipality, Stephenson cannot be held liable under § 1983 based on *respondeat superior* or vicarious liability. *Hardin v. Hayes*, 957 F.2d 845, 849 (11th Cir. 1992). However, Stephenson may be liable under § 1983 if he participated directly in acts constituting a constitutional violation, or if the challenged actions are causally connected to a constitutional violation. As discussed above, Harris has alleged that Stephenson was at the scene of Wilder's death and was acting in concert with the other Defendants. (Doc. 57 at ¶ 3–4). As a result, Harris has alleged enough to survive a motion to dismiss as to Stephenson. Accordingly, The Town of Gordo and Stephenson's Motion to Dismiss (Doc. 32) is due to be DENIED as to Count Four.

### D. Count Five

In Count Five, Harris asserts an unreasonable search via warrantless entry claim against the law enforcement defendants, Grandview, and Hollyhand.

---

[6] On November 15, 2021, Harris sought leave of this Court to amend her complaint and clarify her cause of action against Stephenson and the Town of Gordo. (Doc. 55) This Court granted that request and Harris filed an Amended Complaint (Doc. 57) regarding Count Four.

### i. Abatement

The Town of Gordo, Patterson, Stephenson, Wise, Hall, Heard, Heritage, and Latham all argue Count Five should be dismissed because it does not survive the death of Wilder. (Doc. 33 at 10; Doc. 44 at 7). As previously discussed, if the alleged constitutional violation actually causes the injured person's death, a § 1983 claim can be asserted through the Alabama wrongful death statute, Ala. Code § 6-5-410. *Gilliam*, 639 F.3d at 1047-48. Here, Harris alleges that the entry into Wilder's home was the "proximate cause of the confrontation that ultimately led to Wilder being killed in his own home." (Doc. 20 at ¶ 78). Viewing the facts in the light most favorable to Plaintiff, Harris has alleged that Wilder's death would not have occurred without an unlawful entry into Wilder's residence. As a result, Count Five has not abated with Wilder's death. Accordingly, Defendants Town of Gordo, Patterson, Stephenson, and Wise's Motion to Dismiss (Doc. 32) and Defendants Hall, Heard, Heritage, and Latham's Motion to Dismiss (Doc. 43) are due to be DENIED as to Count Five.

### ii. Qualified Immunity

In addition to arguing Count Five should be dismissed because of abatement, Defendants Hall, Heard, Heritage, and Latham assert that Count Five should be dismissed based upon qualified immunity. (Doc. 64 at 2).  Here, Plaintiff does not

dispute that Hall, Heard, Heritage, and Latham were engaged in a discretionary function at the time of the incident. As such, the above-mentioned two-part test determines whether qualified immunity applies. *Saucier*, 533 U.S. at 201.

### 1.  Constitutional Violation

The "chief evil" the Fourth Amendment protects against is a government agent's warrantless entry into a person's home. *Hardigree v. Lofton*, 992 F.3d 1216, 1224 (11th Cir. 2021). When an officer enters a person's home without a warrant and without consent, any resulting search or seizure violates the Fourth Amendment unless it was supported by probable cause and exigent circumstances. *Payton v. New York*, 445 U.S. 573, 587-90; *United States v. Tovar-Rico*, 61 F.3d 1529, 1534–35 (11th Cir. 1995); *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991). An officer can justify a warrantless entry by showing both that there was probable cause to believe evidence of a crime was in the house, and that exigent circumstances existed. *Tobin*, 923 F.2d at 1510.

"Probable cause exists when 'the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed ... an offense.'" *Miller v. Harget*, 458 F.3d 1251, 1259 (11th Cir. 2006) (qouting *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998)). In cases involving

warrantless searches or seizures, law enforcement officers will be entitled to qualified immunity if they had even "arguable probable cause." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1251 (11th Cir. 2013). Arguable probable cause exists if "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed." *Swint v. City of Wadley*, 51 F.3d 988, 996 (11th Cir. 1995). "Though probable cause "is incapable of precise definition," we know that "the belief of guilt must be particularized with respect to the person to be searched or seized." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

Exigent circumstances exist when "the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." *United States v. Burgos*, 720 F.2d 1520, 1526 (11th Cir. 1983). For example, courts have found exigent circumstances where officers entered a home to prevent the destruction of evidence, *United States v. Mikell*, 102 F.3d 470, 476 (11th Cir. 1996), to pursue a fleeing suspect, *United States v. Santana*, 427 U.S. 38, 42–43 (1976), and to break up a violent fight, *Brigham City v. Stuart*, 547 U.S. 398, 406 (2006).

By Plaintiff's allegations, Harris has sufficiently alleged a constitutional violation based upon the warrantless entry into Wilder's apartment. Harris alleges Wilder refused to open the door to the officers. (Doc. 20 at ¶ 19). As the officers

attempted to get Wilder to open the door, a maintenance worker with Grandview and Hollyhand provided Stephenson with a key to the front door of Wilder's apartment. (*Id.* at ¶ 28). Powell then distracted Wilder at a side window while Stephenson and the other officers used the key to make entry through the front door. (*Id.* at ¶ 31). Because the door was bolted, Patterson kicked the door open and saw that Wilder had a knife. (*Id.* at ¶ 33). Wilder then slammed the door back shut and attempted to prevent officers from entering his residence. (*Id.*). Patterson, Heard, Wise, and Latham all discharged their tasers through the crack in the door but missed. (*Id.* at ¶ 34). After reloading, Stephenson's taser hit Wilder and all the officers rushed in to subdue Wilder. (*Id.* at ¶ 35). There are no allegations that suggest that the facts and circumstances within the officers' knowledge, would have caused a prudent person to believe, that Wilder had committed an offense. The allegations further fail to support arguable probable cause, offering no indication that reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed. Instead, the current allegations demonstrate only that someone reported hearing a loud noise from Wilder's apartment prior to any officer's arrival.

Even if probable cause existed, the allegations fail to demonstrate any exigent circumstances that would allow officers to enter Wilder's residence. There are no

allegations that officers needed to prevent the destruction of evidence, pursue a fleeing suspect, or to break up a violent fight. Nothing in Harris's Complaint indicate an "urgent need for immediate action." *Burgos*, 720 F.2d at 1526. Thus, reviewing the allegations of the amended complaint in a light most favorable to Harris, it cannot be said that the officers had both probable cause to believe a crime had been committed and that exigent circumstances existed. As pled, Plaintiff's allegations state a cause of action for unreasonable search via warrantless entry in violation of the Fourth Amendment against Hall, Heard, Heritage, and Latham. As such, Harris has sufficiently alleged a constitutional violation.

## 2. Clearly Established

Next, the Court turns to the second step of qualified immunity—that is, whether the rights that Harris alleges were clearly established. A constitutional right may be clearly established in one of three ways: case law with materially similar facts establishing the conduct as illegal, a broad statement of principle in the Constitution, a statute, or case law that clearly establishes the constitutional right, or conduct so egregious that a constitutional right was clearly violated in the absence of case law. *Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013). In *McClish v. Nugent*, 483 F.3d 1231 (11th Cir. 2007) the Eleventh Circuit held that arresting someone inside his or her home without a warrant violates the Fourth Amendment even if probable

cause exists, when exigent circumstances do not also exist. *Id.* at 1248. Here, viewing the allegations in the light most favorable to Harris, no probable cause or exigent circumstances existed. As such, the alleged violation of Wilder's constitutional right was clearly established at the time of Hall, Heard, Heritage, and Latham's entry into Wilder's home. Accordingly, Defendants Hall, Heard, Heritage, and Latham's Motion to Dismiss (Doc. 43) is due to be DENIED as to Count Five based upon qualified immunity.

### E. Counts Six and Seven

In Count Six, Harris asserts a negligence claim for wrongful death against Defendants. In Count Seven, Harris asserts a wantonness claim for wrongful death against Defendants. Hall, Heard, Heritage, and Latham argue Counts Six and Seven should be dismissed due to absolute immunity. (Doc. 44 at 10). The Town of Gordo, Patterson, Stephenson, Wise, Powell, and Gilliam all argue that Counts Six and Seven should be dismissed because they are an impermissible shotgun pleading. (Doc. 31 at 11; Doc. 33 at 10; Doc. 48 at 11).

#### i.  Absolute Immunity

Sheriffs are granted absolute immunity from lawsuits when "acting within the line and scope of their employment." Ala. Const. Art. 1 § 14; *Ex parte Sumter County*, 953 So. 2d 1235, 1239 (Ala. 2006). This immunity bars state-based tort claims against

sheriffs in Alabama. *See e.g., Timney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996); *Ex parte Blankenship*, 893 So. 2d 303, 305 (Ala. 2004); *Ex parte Haralson*, 871 So. 2d 802, 807 (Ala. 2003). This State immunity also applies to deputies who are "acting within the line and scope of their employment." *Ex parte Sumter County*, 953 So. 2d at 1239. Here, Harris has alleged that Hall, was acting in his capacity as Pickens County Sheriff. (Doc. 20 at ¶ 4). Harris has also alleged that Heard, Heritage, and Latham were all acting in their capacities as sheriff deputies during the events surrounding Wilder's death. (*Id.* at ¶ 11–13). Further, Harris does not dispute that Hall, Heard, heritage, and Latham were acting within the line and scope of their employment. Accordingly, Defendants Hall, Heard, Heritage, and Latham's Motion to Dismiss (Doc. 43) is due to be GRANTED as to Counts Six and Seven based on absolute immunity.

### ii.  Shotgun Pleading

The Town of Gordo, Patterson, Stephenson, Wise, Powell, and Gilliam argue that Harris has plead only legal conclusions in Counts Six and Seven which renders them an impermissible shotgun pleading. This Court disagrees. As discussed above, Harris has failed to specifically allege which facts give rise to her negligence and wantonness claim. However, Harris did incorporate by reference the facts laid out in paragraphs one through fifty-five. A review of those facts reveals that Wilder was

shot after numerous law enforcement officers forced their way into his residence. Those facts contain allegations that Defendants knew of Wilder's mental illness and either ignored it or willfully exacerbated it. Because Rule 8(a)(2) only requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Harris has plead enough information to survive a motion to dismiss as to Count One. Fed. R. Civ. P. 8(a)(2). Accordingly, Defendant Powell's Motion to Dismiss (Doc. 30), Defendants Town of Gordo, Patterson, Stephenson, and Wise's Motion to Dismiss (Doc. 32), Defendants Hall, Heard, Heritage, and Latham's Motion to Dismiss (Doc. 43), and Defendant Gilliam's Motion to Dismiss (Doc. 47) are due to be DENIED as to Count Six and Seven.

### F. Count Eight

In Count Eight, Harris asserts a municipal liability claim against the Town of Gordo under § 1983. The Town of Gordo argues this claim should be dismissed for failure to allege any facts that would impose municipality liability under Alabama law. (Doc. 33 at 11). "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). As discussed above, Harris has alleged that Stephenson was "the

policy maker for the Town of Gordo for law enforcement matters and thus his directives, actions or inactions constitute a policy, custom, or practice for the Town of Gordo." (Doc. 20 at ¶ 49). Harris also alleged that Stephenson was present at the scene when Wilder was killed and that his actions at the scene constituted the policies and practices of the Town of Gordo. (Doc. 57 at ¶ 3). Thus, Harris has alleged that Stephenson, a final policymaker, ratified an unconstitutional decision while at the scene of Wilder's death. Accordingly, Defendant Town of Gordo Motion to Dismiss (Doc. 32) is due to be DENIED as to Count Eight.

### G. Count Ten

In Count Ten, Harris asserts a conspiracy claim under §1983 against Defendants. Powell and Gilliam argue Count Ten should be dismissed because it does not survive the death of Wilder. (Doc. 31 at 15; Doc. 48 at 14). The Town of Gordo, Patterson, Stephenson, and Wise argue Count Ten should be dismissed because Harris has failed to state a claim upon which relief can be granted. (Doc. 33 at 11).

### i.   Abatement

In Harris's Opposition to Defendants' Motion to Dismiss (Doc. 51), Harris failed to argue why this has not abated. As a result, Harris has abandoned Count Ten as to defendants Powell and Gilliam. *See Hooper,* 482 F.Supp.2d at 1334 (finding that

the plaintiff's failure to respond to certain arguments raised in defendant's motion to dismiss resulted in the abandonment and subsequent dismissal of those claims). Accordingly, Defendant Powell's Motion to Dismiss (Doc. 30) and Defendant Gilliam's Motion to Dismiss (Doc. 47) are due to be GRANTED as to Count Ten.

### ii.   Failure to State a Claim

The Town of Gordo, Patterson, Stephenson, and Wise argue that Harris fails to state a claim upon which relief can be granted because the complaint makes only conclusory allegations regarding the conspiracy claim. (Doc. 33 at 12). This Court disagrees. To state a claim for conspiracy under § 1983, Harris must show that the parties "reached an understanding" to deny Wilder his rights and show that the conspiratorial acts impinged upon the federal rights of Wilder. *Bendiburg v. Dempsey,* 909 F.2d 463, 468 (11th Cir. 1990). In Count Ten, Harris alleges that "Defendants reached a mutual understanding and conspired with each other to violate Plaintiff's civil rights." (Doc. 20 at ¶ 89). Harris then lists numerous overt acts that were taken by Defendants in furtherance of the conspiracy. (*Id.*). Moreover, Harris incorporated by reference the facts laid out in her previous fifty-five paragraphs. A review of those facts reveals that Harris alleged the Defendants formulated a plan and spent over an hour doing so. (*Id.* at ¶ 22, 42). As a result, Harris has alleged enough to survive a motion to dismiss as to Count Ten. Accordingly, Defendants Town of Gordo,

Patterson, Stephenson, and Wise's Motion to Dismiss (Doc. 32) is due to be DENIED as to Count Ten.

## IV.    Conclusion

For the reasons discussed above, Defendant Powell's Motion to Dismiss (Doc. 30) is due to be GRANTED IN PART and DENIED IN PART. Defendants Town of Gordo, Patterson, Stephenson, and Wise's Motion to Dismiss (Doc. 32) is due to be GRANTED IN PART and DENIED IN PART. Defendants Hall, Heard, Heritage, and Latham's Motion to Dismiss (Doc. 43) is due to be GRANTED IN PART and DENIED IN PART. Defendant Gilliam's Motion to Dismiss (Doc. 47) is due to be GRANTED IN PART and DENIED IN PART. An Order consistent with this opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on June 21, 2022.

L. Scott Coogler
United States District Judge

206770